IN THE UNITE STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUAN MANQUERA,

    Plaintiff,

vs.                                      No. Civ-

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF DONA ANA;
THE DONA ANA COUNTY DETENTION CENTER,
JOHN DOE,

    Defendants.

**COMPLAINT FOR THE RECOVERY OF DAMAGES
CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS**

    Plaintiff brings this complaint for damages caused by the violation of his civil and constitutional rights: Plaintiff files this complaint under the federal Civil Rights Act, and the Constitution of the United States. Plaintiff also brings claims under the New Mexico Tort Claims Act. In support of this Complaint, Plaintiff alleges the following:

    **I.    JURISDICTION AND VENUE**

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C 1331 and 42 U.S.C §§1983 and 1988. Venue us proper as the acts complained of occurred exclusively within Dona Ana County, New Mexico.

    **II.    PARTIES**

2. Plaintiff, Juan Manquera, is an individual and resident of Dona Ana County, New Mexico.

3. Defendant Board of County Commissioners for the County of Dona Ana, (hereinafter "Board"), is a governmental entity within the State of New Mexico and a "person" under 43 U.S.C. § 1983. At all times material to this Complaint the Board was the employer of the individual defendant.

4. Defendant Dona Ana County Detention Center ("DACDC") is the agency responsible for the safe, secure and humane housing of detainees in Dona Ana County.

5. Defendant Daniel Peters and other directors known or unknown at all material times were the Director of DACDC and are sued in their official capacities. Defendant Director was acting under color of state law and within the scope of his employment at all material times.

6. Defendant John Doe 1 at all times material was the individual tasked with evaluating the defendant's for mental compentency.

### III.     FACTUAL BACKGROUND

7. In January 2011 Plaintiff was arrested for a reported "disturbance". He was arrested for ten (10) various charges but eventually was tired on five counts of aggravated assault on a peace officer with a deadly weapon, tampering with evidence, resisting arrest and negligent use of a firearm.

8. On February 22, 2011 Steve Sage was appointed as a contract counsel for Manquera.

9. On September 8, 2011 an *ex-parte* motion for competency evaluation was filed. The Court ordered an evaluation within 14 days and eventually suspended proceedings pending an evaluation.

10. On May 15, 2012, more than nine months after the competency motion was filed the Court found Manquera incompetent based on a forensic evaluation by Dr. Jeanette Castillo and stipulation by the parties.

11. The Court ordered Manquera to the New Mexico Behavioral Health Institute ("NMBHI") for a dangerousness evaluation.

12. On June 19, 2012, Manquera was admitted to NMBHI and six (6) months later the parties stipulated to dangerousness. The district court committed Manquera to NMBHI and stayed the criminal proceedings.

13. On April 24, 2013 the court set a competency hearing for May 31, 2013. Counsel moved to withdraw, noted an April 17th evaluation finding Manquera competent and suspended proceedings pending appointment of further counsel.

14. Mario Carreon was appointed, filed a motion for release, noting the two (2) years of incarceration and six (6) additional months in NMBHI. The state opposed and the Court detained the defendant.

15. On November 21, 2013 the State acknowledged that a competency stipulation was not reached, asked the court to rely on the April 17th finding. The Court heard testimony from Manquera that the state hospital rejected honest answers and insisted on answers. The court ordered a new evaluation.

16. On February 14, 2014 the State asked the Court to stand on the report as it was not able to produce a witness. Mr. Carreon moved to dismiss the case because it was not resolved within nine (9) months of incompetency and dangerousness. He further moved to withdraw.

17. Dr. Andrews testified by phone and found Manquera competent based only on records from the jail, court and NMBHI and not on any current test.

18. Manquera was tried and convicted of multiple offenses.

**Count I: Violation of Procedural Due Process**

19. Plaintiff restates each of the preceding allegations as if fully herein stated.

20. Plaintiff was not afforded procedural due process in conformity with the statute, the New Mexico Constitution and the United States Constitution.

21. Plaintiff was not afforded a hearing as required before being held for many months.

22. The jail as an entity and individuals familiar with individuals with mental disabilities did not identify Manquera.

23. The defendants individually and collectively denied Manquera procedural due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

**Count II: Violation of Substantive Due Process.**

24. Plaintiff restates each of the preceding allegations as if fully herein stated.

25. Plaintiff has a right to substantive due rights under the statute, the New Mexico Constitution and the United States Constitution.

26. Defendants chose to ignore rather than deal with the Plaintiff's mental issues.

27. Defendants knew Plaintiff faced a substantial risk of serious mental harm if his conditions of confinement did not meet contemporary standards of decency.

28. Defendants acted with deliberate indifference to this risk.

29. Plaintiff's conditions of confinement amounted to punishment of a pre-trial detainee in violation of the Fourteenth Amendment to the United States Constitution.

**Count III: Violation of the Americans with Disabilities Act**

30. Plaintiff restates each of the preceding allegations as if fully stated herein.

31. Plaintiff is entitled to be free from discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq.

32. Defendants failed to accommodate Plaintiff's mental disability and denied him the benefits and services of the jail by reason of his mental disability.

33. Plaintiff was denied social interaction by reason of his mental disability.

34. Plaintiff was unnecessarily segregated due to his mental disability.

35. Plaintiff was denied reasonable standards of hygiene, dental and medical care due to his mental disability.

36. As a proximate and foreseeable result of Defendants 'discriminatory acts and omissions Plaintiff suffered injuries including pain and suffering, emotional distress and an exacerbation of his mental illness.

**Count IV: Municipal Liability**

37. Plaintiff states each of the preceding allegations as if fully stated herein.

38. Defendants Board and [director] are policy makers responsible for hiring training and supervision of its employees.

39. The policies, customs, decisions and practices of Defendants Board and [director] have created a climate within DACDC whereby the mentally ill are deprived of adequate medical care and humane conditions of incarceration.

40. Defendants Board and [director] have a policy and custom of placing inmates with mental disabilities into solitary confinement.

41. There is a causal connection between Defendants 'policies and the violation of Plaintiff's constitutional rights with amounts to deliberate indifference.

**Count V: False Imprisonment Under the Tort Claims Act**

42. Plaintiff restates each of the preceding allegations as if fully stated herein.

43. Plaintiff was placed in solitary confinement in violation of his constitutional rights.

44. Plaintiff's prolonged detention in solitary confinement was not justified or privileged under state law and therefore constituted false imprisonment.

45. The Board and DACDC Defendants are responsible to Plaintiff under the doctrine of respondeat superior for the conduct of their employees.

46. The actions of Defendants were willful, wanton and in gross and reckless disregard of Plaintiff's rights.

**Count VI: Negligent Maintenance of a Building Under the Tort Claims Act**

47. Plaintiff restates each of the preceding allegations as if fully stated herein.

48. Defendants know they are entrusted with the detention of large numbers of mentally ill inmates.

49. Defendants 'facility is not designed to house people with severe mental illnesses.

50. Defendants owed Plaintiff a duty of care not to house him in a manner likely to cause injury.

51. In operating DACDC Defendant chose to house Plaintiff in solitary confinement rather than in a medical facility capable of treating his illness.

52. By subjecting Plaintiff to such a long period of solitary confinement Defendants breached their duty to house Plaintiff in a reasonably prudent manner.

53. Plaintiff suffered injuries as a direct result of Defendants 'negligent conduct.

### IV.   DAMAGES

54. As a result of the foregoing, Plaintiff has suffered damages and injuries including but no limited to, physical injuries, pain and suffering, and severe psychological and emotional distress.

### V.  JURY DEMAND

55. Plaintiff hereby demands a trial by jury on all counts so triable.

56. Wherefore, Plaintiff requests judgment as follows:

57. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

58. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

59. Reasonable costs and attorney's fees incurred in bringing this action.

60. Such other and further relief as the Court deems just and proper.

                                    Respectfully submitted,

                                    /s/ *Brock Benjamin*_____
                                    BROCK BENJAMIN
                                    Attorney for Defendant
                                    Tex. Bar No. 24048167
                                    1600 N. Mesa
                                    El Paso, Texas 79902
                                    Tel: (915) 412-5858
                                    Fax: (915) 503-2224
                                    E-Mail:  brock@brockmorganbenjamin.com